UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KENNETH JAMES KENDRICK,**

    **Petitioner,**

v.　　　　　　　　　　　　　　　　　　　　Case No. 8:20-cv-397-MSS-AAS

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    **Respondent.**
_____/

**O R D E R**

Kendrick petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for attempted sexual battery, kidnapping, robbery, and resisting arrest without violence (Doc. 15), the Respondent asserts that the amended petition is untimely (Docs. 45, 46, and 61), and Kendrick replies that his actual innocence excuses the time bar. (Docs. 47, 57, 60)[1]

**PROCEDURAL HISTORY**

In 1995, a jury found Kendrick guilty of the crimes (Doc. 46-2 at 110–11), and the trial court sentenced Kendrick to life for the attempted sexual battery conviction (Doc. 46-2 at 142–43), a concurrent term of life for the kidnapping conviction (Doc. 46-2 at 144–45), thirty years of probation for the robbery conviction (Doc. 46-2 at 159–61), and time served for the resisting arrest conviction. (Doc. 46-2 at 385) The trial court imposed a fifteen-year mandatory

---

[1] The Respondent moves to dismiss the Attorney General as a respondent in the action. (Doc. 61 at 1–2) Because "the proper respondent is the warden of the facility where the prisoner is being held," the Respondent's motion is **GRANTED**. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

minimum term for the attempted sexual battery and kidnapping convictions, after finding that Kendrick was a habitual violent felony offender. (Doc. 46-2 at 143, 145) The state appellate court affirmed. (Doc. 46-2 at 425)

In 1997, the post-conviction court vacated his sentence for the robbery conviction because the trial court erroneously ran the term of probation concurrent with the term of incarceration for the other convictions. (Doc. 46-2 at 427–31) The trial court entered an amended judgment and resentenced Kendrick to one day of prison for the robbery conviction. (Doc. 46-2 at 433–34)

In 1997, Kendrick petitioned for a writ of habeas corpus in federal court and challenged his convictions and sentences. (Doc. 46-2 at 437–61) Judge Steven Merryday denied the petition as meritless. *Kendrick v. Moore*, No. 8:97-cv-2624-SDM-MAP (M.D. Fla.), ECF No. 39. The court of appeals denied a certificate of appealability. *Kendrick*, No. 8:97-cv-2624-SDM-MAP, ECF No. 49.

In 2002, the state appellate court reversed in part the post-conviction court's order denying Kendrick's motion to correct his sentence and remanded for resentencing on the attempted sexual battery conviction. (Doc. 46-2 at 670–71) The state appellate court determined that the written judgment and sentence erroneously stated that the attempted sexual battery conviction was a first-degree felony, instead of a second-degree felony. (Doc. 46-2 at 671) Because the maximum sentence that Kendrick, a habitual violent felony offender, could receive for the second-degree felony was thirty years with a ten-year mandatory minimum term, the life sentence with a fifteen-year mandatory minimum term was illegal. (Doc. 46-2 at 671)

In 2003, the trial court entered an amended judgment and resentenced Kendrick to thirty years with a ten-year mandatory minimum term for the attempted sexual battery conviction. (Doc. 46-2 at 738–40) Kendrick appealed the trial court's imposition of a sexual predator designation, and the state appellate court affirmed and certified conflict with an opinion from another state court of appeal. (Doc. 46-2 at 889–90) The state supreme court dismissed Kendrick's petition for review for lack of jurisdiction. (Doc. 46-2 at 892)

In 2007, the court of appeals denied Kendrick's application to file a second or successive petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 46-2 at 898–99) The court of appeals determined that Kendrick failed to present claims based on new evidence or a new rule of constitutional law. (Doc. 46-2 at 898–99)

Kendrick engaged in extensive post-conviction litigation in state court. In 2011, the trial court prohibited Kendrick from filing any further *pro se* motion or pleading because of his abuse of process (Doc. 46-2 at 931–36), and the state appellate court affirmed. (Doc. 46-2 at 1030)

On February 14, 2020, Kendrick filed his federal petition. (Doc. 1 at 23–24) *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). In his amended petition (Doc. 15), he asserts that he is actually innocent of the crimes (Ground One), his life without parole sentence violates the Florida constitution, which prohibits an "indefinite" term of imprisonment (Ground Two), the trial court erred by imposing a habitual violent felony offender sentence for kidnapping (Ground Three), the trial judge acted as a prosecutor by denying Kendrick's motion to suppress evidence before trial (Ground Four), and the trial court violated Kendrick's right to federal due process by prohibiting him from filing a *pro se* motion or pleading. (Ground Five)

3

## ANALYSIS

In 1997, Judge Merryday denied Kendrick's federal petition for a writ of habeas corpus attacking his state court convictions, and the court of appeals denied a certificate of appealability. *Kendrick*, No. 8:97-cv-2624-SDM-MAP, ECF Nos. 39 and 49. Before filing a second or successive petition, the petitioner must obtain permission from the court of appeals. 28 U.S.C. § 2244(b)(3)(A). Kendrick did not obtain permission from the court of appeals to file his new federal petition.

However, in 2002, the state appellate court granted Kendrick post-conviction relief and remanded the case to the trial court for resentencing on the attempted sexual battery with a deadly weapon conviction. (Doc. 46-2 at 670–71) In 2003, the trial court entered an amended judgment and sentence for the attempted sexual battery conviction. (Doc. 46-2 at 738–41) The new judgment resets the limitation period and permits Kendrick to file a new federal petition attacking the new judgment. *Insignares v. Sec'y, Fla. Dep't Corrs.*, 755 F.3d 1273, 1281 (11th Cir. 2014); *Ferreira v. Sec'y, Dep't Corrs.*, 494 F.3d 1286, 1292–93 (11th Cir. 2007).

The Respondent asserts that Kendrick may not challenge the kidnapping conviction in his new federal petition because the trial court vacated only the attempted sexual battery conviction. (Doc. 45 at 10–12) However, the trial court initially entered a single judgment for both the attempted sexual battery and kidnapping convictions. (Doc. 46-2 at 139–46) When the trial court entered a new amended judgment and sentence, the trial court entered a new judgment for both convictions. Consequently, the limitation period reset for both convictions, and Kendrick may challenge both convictions in his new federal petition. *Maharaj v. Sec'y, Dep't Corrs.*, 304 F.3d 1345, 1349 (11th Cir. 2002); *Thompson v. Fla. Dep't Corrs.*, 606 F. App'x 495, 506 (11th Cir. 2015).

A one-year statute of limitation applies to a federal habeas petition challenging a state court judgment. 28 U.S.C. § 2244(d)(1). The limitation period begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

Kendrick appealed the new sentence for the attempted sexual battery conviction but only challenged the sexual predator designation imposed with his sentence. (Doc. 46-2 at 889–90) Even though a sexual predator designation is not a sentence or a punishment, a defendant may challenge an order imposing a sexual predator designation on direct appeal. *Saintelien v. State*, 990 So. 2d 494, 496 (Fla. 2008) ("'[A] defendant has the opportunity to appeal an order imposing a sexual predator designation under Florida Rule of Appellate Procedure 9.140(b)(1)(D), which grants appellate jurisdiction over criminal court orders 'entered after final judgment or finding of guilt.'").

The state appellate court affirmed in a written opinion and certified conflict with another state appellate court's opinion. (Doc. 46-2 at 889–90) Kendrick petitioned the state supreme court for review, and the state supreme court denied review on November 18, 2005. (Doc. 46-2 at 892–93) Kendrick could have sought further review in the United States Supreme Court. He did not seek further review, and the time to seek further review expired ninety days after the state supreme court's order denying review — February 17, 2006. Sup. Ct. R. 13(1). Consequently, the limitation period started to run the next day. Fed. R. Civ. P. 6(a)(1)(A). *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002).

"[A] properly filed application for State post-conviction or other collateral review" tolls the limitation period. 28 U.S.C. § 2244(d)(2). Kendrick engaged in extensive post-conviction litigation in state court. On November 14, 2011, the post-conviction court

5

prohibited Kendrick from filing a *pro se* motion or pleading in his state criminal case because Kendrick abused the post-conviction process. (Doc. 46-2 at 931–36) On February 14, 2020, Kendrick filed his federal petition. (Doc. 1 at 24) *Washington*, 243 F.3d 1299, 1301. The Respondent contends that the federal petition is untimely because Kendrick could not have properly filed a post-conviction motion to toll the limitation period after November 4, 2011 — the date that the post-conviction court barred further *pro se* litigation. (Doc. 45 at 12–13)

However, when the post-conviction court entered the order barring further *pro se* litigation, two post-conviction appeals remained pending. *Kendrick v. State*, No. 2D11-146 (Fla. 2d DCA); *Kendrick v. State*, No. 2D10-5888 (Fla. 2d DCA). The limitation period tolled until mandate issued on post-conviction appeal. *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000). Judicially noticed records show that mandate issued in No. 2D11-146 on November 17, 2011 and issued in No. 2D10-5888 on December 8, 2011. Consequently, assuming that the limitation period tolled until the order barring further *pro se* litigation entered, the limitation period further tolled until December 8, 2011, when mandate issued on post-conviction appeal.

Also, the state appellate court did not bar Kendrick from engaging in *pro se* litigation. If Kendrick properly filed an extraordinary writ petition attacking his convictions and sentences in the state appellate court, the limitation period tolled. 28 U.S.C. § 2244(d)(2). Judicially noticed records show that Kendrick petitioned the state appellate court for a writ of habeas corpus on June 18, 2012, and the state appellate court denied the petition on July 12, 2012. *Kendrick v. State*, No. 2D12-3232 (Fla. 2d DCA). Assuming that Kendrick properly filed the state habeas petition, the limitation period ran from December 9, 2011 until June 17, 2012 — 192 days. The limitation period tolled until the time to seek rehearing expired, or fifteen

6

days after the order denying the petition entered — July 30, 2012. Fla. R. App. P. 9.330(a)(1); Fla. R. Jud. Admin. 2.514(a)(1)(C). *Nix v. Sec'y, Dep't Corrs.*, 393 F.3d 1235, 1237 (11th Cir. 2004). The limitation period began to run the next day.

Kendrick did not file another extraordinary writ petition in the state appellate court until 2014. *Kendrick v. State*, No. 2D14-5490 (Fla. 2d DCA). Consequently, the limitation period continued to run for 173 days until January 21, 2013, when the one-year statute of limitation expired.

Kendrick filed additional extraordinary writ petitions in the state appellate court. *See Kendrick v. State*, No. 2D19-4063 (Fla. 2d DCA); *Kendrick v. State*, No. 2D19-3444 (Fla. 2d DCA); *Kendrick v. State*, No. 2D19-2599 (Fla. 2d DCA); *Kendrick v. State*, No. 2D19-975 (Fla. 2d DCA); *Kendrick v. State*, No. 2D17-4679 (Fla. 2d DCA); *Kendrick v. State*, No. 2D17-2703 (Fla. 2d DCA). However, because Kendrick filed the petitions after the limitation period expired, the limitation period did not toll. *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("[O]nce a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas filing deadline does not revive it.").

Also, the state supreme court did not bar Kendrick from engaging in *pro se* litigation. Judicially noticed records show that Kendrick petitioned the state supreme court for a writ of mandamus on November 14, 2011, and the state supreme court denied the petition on December 15, 2011. *Kendrick v. State*, No. SC11-2218 (Fla.). Kendrick petitioned for a writ of quo warranto on December 15, 2011, and the state supreme court denied the petition on February 16, 2012 and denied rehearing on March 5, 2012. *Kendrick v. State*, No. SC11-2524 (Fla.). Kendrick again petitioned for a writ of mandamus on January 11, 2012, and the state supreme court dismissed the petition for lack of jurisdiction on January 12, 2012. *Kendrick v.*

*State*, No. SC12-56 (Fla.). Kendrick did not file another extraordinary writ petition in the state supreme court until 2016. *Kendrick v. Jones*, No. SC16-955 (Fla.). Even assuming that the mandamus and quo warranto petitions attacked the legality of Kendrick's convictions and sentences and tolled the limitation period in 2011 and 2012, the limitation period expired at the latest on January 21, 2013. Consequently, Kendrick's federal petition filed on February 14, 2020 (Doc. 1 at 24) is untimely.

**Equitable Tolling**

Kendrick asserts that he did not timely file his federal petition because the trial court barred him from filing a *pro se* motion or pleading and prevented him from pursuing his rights in state court. (Doc. 15 at 15–16)

Equitable tolling applies to a Section 2254 petition and requires the petitioner to demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

In an order directing Kendrick to show cause why the court should not impose sanctions, the post-conviction court identified approximately forty-five post-conviction motions that Kendrick had filed after his resentencing in 2003. (Doc. 46-2 at 938–41) Judicially noticed records show that, during the same period, Kendrick initiated forty-five proceedings in the state appellate court and twenty-three proceedings in the state supreme court. Even after the trial court barred him from filing a *pro se* motion or pleading, Kendrick initiated and litigated numerous extraordinary writ petitions in the state appellate court and the state supreme court. He does not explain how the trial court's order barring him from filing a *pro se* motion or pleading was an extraordinary circumstance and how the order

8

prevented him from timely filing his petition in federal court. Consequently, the limitation period did not equitably toll. *Wakefield v. R.R. Ret. Bd.*, 131 F.3d 967, 970 (11th Cir. 1997) ("Ignorance of the law usually is not a factor that can warrant equitable tolling."); *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011) ("As for the 'extraordinary circumstance' prong, . . . we too have required a defendant to show a causal connection between the alleged extraordinary circumstances and the late filing of the petition.").

**Actual Innocence**

Kendrick asserts that actual innocence excuses the time bar. (Docs. 15 at 15–16, 31 at 1–3, 47 at 2–5, 57 at 3–8, and 62 at 3–5) "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass . . . [the] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Kendrick fails to come forward with new reliable evidence that proves his actual innocence. He instead argues that the prosecutor failed to prove the crimes at trial. At trial, the victim, an assistant public defender, testified that she rode the elevator to her office on the sixth floor after returning from lunch. (Doc. 46-2 at 223–24) When the elevator stopped at the fifth floor, Kendrick asked her if the floor was vacant. (Doc. 46-2 at 225) The victim

9

pointed to a sign that advised that offices on the floor had moved to another building. (Doc. 46-2 at 225) Kendrick looked over his shoulder, pulled the victim out of the elevator, and dragged her down the hall. (Doc. 46-2 at 225–26) When the victim collapsed to her knees, Kendrick dropped to his knees, lurched over the victim's body from behind, and said, "You know what I want, don't you?" (Doc. 46-2 at 226) When the victim offered Kendrick money, Kendrick pressed something hard on the victim's back and said, "I want that tan. You know I'll kill you, don't you?" (Doc. 46-2 at 226)

Kendrick wrapped his arm around the victim's neck in a chokehold, pulled her up by the neck, and dragged her further down the hall. (Doc. 46-2 at 227) Kendrick tried to open several doors leading to offices, but the doors were locked. (Doc. 46-2 at 227) The victim twisted out of the chokehold, dropped her purse on the ground, and ran away screaming. (Doc. 46-2 at 227–28) The victim hid behind a wall partition until Kendrick left. She then went to her office and told her secretary to call the police. (Doc. 46-2 at 228–29)

A short time later, a police officer saw Kendrick walking on the street nearby carrying a purse. (Doc. 46-2 at 260) The officer observed Kendrick walk up to a group of ladies while "swaggering his hips like a lady would do." (Doc. 46-2 at 260–61) Kendrick stopped a few people, engaged in brief conversation, and walked away. (Doc. 46-2 at 261) Kendrick crossed the street and returned the way that he came. (Doc. 46-2 at 261) The officer motioned to Kendrick, indicating that he wanted to speak with him, and Kendrick began to run down an alley. (Doc. 46-2 at 261–62) A group of males in a car coming down the alley chased Kendrick. (Doc. 46-2 at 262) The officer caught up to Kendrick and found the victim's purse. (Doc. 46-2 at 262–64)

At trial, on cross-examination, the victim denied that Kendrick touched her breasts, buttocks, or genitalia, denied that he tried to remove her clothing, and denied that he tried to kiss her. (Doc. 46-2 at 230–31) The victim testified that she understood Kendrick's comments to mean that he wanted to rape her. (Doc. 46-2 at 231) In closing argument, trial counsel conceded that Kendrick was guilty of lesser offenses but argued that Kendrick did not attempt to sexually batter the victim and did not kidnap the victim. (Doc. 46-2 at 277–84, 290–95) The jury rejected the argument and found Kendrick guilty of attempted sexual battery, kidnapping, resisting arrest with violence, and robbery. (Doc. 46-2 at 321–22)

Kendrick asserts that the prosecutor's failure to prove that he had specific intent to commit a sexual battery and failure to prove that he committed an overt act towards the commission of that crime proves his actual innocence. (Doc. 57 at 3–5) However, attempted sexual battery is a general intent crime. *Holland v. State*, 773 So. 2d 1065, 1071 (Fla. 2000) ("Sexual battery is a general intent crime. Thus, . . . attempted sexual battery is also a general intent crime.") (citations omitted). Even so, "questions of intent are especially suited for jury determinations because intent is rarely proved with direct evidence and 'reasonable men may differ in determining intent when taking into consideration the surrounding circumstances.'" *Moore v. State*, 295 So. 3d 1259, 1265 (Fla. 2d DCA 2020) (citation omitted).

Given the facts set forth above, a reasonable juror could have concluded that Kendrick intended to sexually batter the victim and committed an overt act towards the commission of the crime. *Gudinas v. State*, 693 So. 2d 953, 962–63 (Fla. 1997).

Kendrick further asserts that the prosecutor's failure to demonstrate that the confinement of the victim was not slight or inconsequential proves his actual innocence of kidnapping. (Doc. 57 at 5–8) The information alleged that Kendrick "did forcibly, secretly,

11

or by threat confine, abduct or imprison [the victim], against her will and without lawful authority with the intent to commit or facilitate the commission of a felony, to wit: Sexual Battery." (Doc. 46-2 at 25) "[K]idnapping occurs when the movement or confinement employed by the defendant is 1) not slight, inconsequential, or incidental to the other crime charged; 2) not inherent in the other crime charged; and 3) significant and independent of the other crime charged so as to lessen the risk of detection or making the other crime easier to commit." *Gloston v. State*, 273 So. 3d 1108, 1111 (Fla. 1st DCA 2019) (citing *Faison v. State*, 426 So. 2d 963 (Fla. 1983)).

Kendrick pulled the victim from the elevator and dragged her down the hall. When the victim fell to her knees, Kendrick dropped to his knees, lurched over the victim from behind, pressed a hard object against her back, and threatened to kill her. Kendrick wrapped his arm around the victim's neck in a chokehold, picked her up by the neck, and dragged her further down the hall while trying to open several doors that led to empty offices. Certainly a reasonable jury was free to conclude that Kendrick's actions were neither slight nor inconsequential, were part of his effort to facilitate the sexual battery, and were part of his effort to reduce the danger of detection while committing the sexual battery. Thus, a reasonable juror could have concluded that Kendrick kidnapped the victim. *Gloston*, 273 So. 3d at 1111 ("Gloston's actions were not inherent to his attempted sexual battery, but rather part of his intent to forcibly move J.W. in order to facilitate a sexual battery. [Also,] Gloston's actions were significant and independent of an attempted sexual battery and were done to lower the risk of detection."); *Glover v. State*, 237 So. 3d 405, 407 (Fla. 4th DCA 2017) (affirming kidnapping conviction because evidence proved that the defendant moved

the victim with the "inten[t] to make it easier to commit sexual batteries and to reduce the danger of detection").

Because Kendrick fails to submit new reliable evidence that proves his innocence and fails to demonstrate that no reasonable juror would have found him guilty, actual innocence does not excuse the time-bar. *McQuiggin*, 569 U.S. at 386.

Accordingly, it is **ORDERED** that Kendrick's amended petition (Doc. 15) is **DISMISSED** as time barred. The Respondent's motion to dismiss (Doc. 61 at 1–2) the Attorney General as a respondent is **GRANTED**. The Clerk is **DIRECTED** to enter a judgment against Kendrick and **CLOSE** this case.

## DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Kendrick neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on January 3, 2023.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE